**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KARYN BAKER, individually and on behalf of others similarly situated,<br><br>               Plaintiff,<br><br>    v.<br><br>ELEVATE CARE, INC. and<br>ELEVATE CARE CHICAGO NORTH, LLC,<br><br>               Defendants. | Case No. 1:22-cv-03933 |

**NOTICE OF REMOVAL**

PLEASE TAKE NOTICE that Defendant Elevate Care Chicago North, LLC ("Elevate North") hereby removes this action, currently pending in the Circuit Court of Cook County, Illinois as Case No. 2022CH05869, to the U.S. District Court for the Northern District of Illinois, pursuant to 28 U.S.C. §§ 1331, 1441, 1446, and 1453, because Plaintiff Baker's claims are completely preempted by the Labor Management Relations Act.

**BACKGROUND**

1. On June 17, 2022, Plaintiff Karyn Baker ("Baker") on behalf of herself and others similarly situated, initiated this lawsuit against Elevate North and Elevate Care, Inc. (collectively, Elevate Care Defendants") in Cook County, Illinois, by filing a class action complaint. A copy of the state court pleadings are attached hereto as Exhibit A.

2. On June 28, 2022, the Elevate Care Defendants were each served with a copy of the summons and complaint in the State Court Action. Copies of the service of process information are attached hereto as Exhibit B.

3. Elevate Care, Inc. consents to this removal.

4. In her complaint, Baker alleges that the Elevate Care Defendants violate the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 et seq. ("BIPA"), through the use of purported fingerprint technology. *See* Compl., ¶ 5.

5. Each of the four Counts is alleged on behalf of Baker and a putative class. *Id.* at ¶¶ 41, 44, 48, 54.

6. Baker, on behalf of herself and the putative class, seeks class certification, appointment of identified counsel, statutory damages, injunctive and equitable relief, and reasonable attorneys' fees and costs. *Id.* at ¶¶ PRAYER FOR RELIEF A–E.

## **REMOVAL IS TIMELY**

7. This Notice of Removal is timely filed under 28 U.S.C. § 1446(b)(1) because it is filed within 30 days of the date on which the Elevate Care Defendants were served with the initial pleading. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (time for filing a notice of removal does not begin to run until a party has been formally served).

## **REMOVAL IS PROPER UNDER 28 U.S.C. § 1331**

8. Removal is proper under 28 U.S.C. § 1331 because this Court has federal question jurisdiction over Baker's claims.

9. A federal district court has federal question jurisdiction over a claim, and removal is therefore proper on that basis, when the claim is completely preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141, *et seq*. *See Atchley v. Heritage Cable Vision Assocs.*, 101 F.3d 495, 498–99 (7th Cir. 1996). "Section 301 preempts claims directly founded on or substantially dependent on analysis of a collective-bargaining agreement." *Id.* at 498 (internal citations omitted). "If the resolution of a state law claim depends on the meaning of, or requires the interpretation of, a collective bargaining agreement, the application of state law is preempted and federal labor law principles must be employed to resolve the dispute." *Id.* at 499.

That is to say, "if it is necessary to interpret express or implied terms of a [collective bargaining agreement], a state law claim is completely preempted by Section 301, the claim is deemed federal in nature from its inception, and the complaint is deemed one that a defendant can remove." *Id.*; *see also Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 413 (1988) (Section 301 completely preempts a state-law claim if resolution of the claim "requires the interpretation of a collective-bargaining agreement."); *see also Healy v. Metro. Pier & Exposition Auth.*, 804 F.3d 836, 841 (7th Cir. 2015) (explaining that a "state law claim requires the interpretation of a collective bargaining agreement" even when just "*an element* of the claim requires a court to interpret any term of a collective-bargaining agreement" (internal citations omitted)).

10. The LMRA applies to Elevate North because it operates a supportive living facility, which is involved in an industry that affects commerce. *See Glen Manor Home for the Jewish Aged v. Nat'l Labor Relations Bd.*, 474 F.2d 1145, 1149 (6th Cir. 1973) (affirming decision that held nursing home met the "industry affecting commerce" requirement); *Maddox v. Grandview Care Ctr., Inc.*, 780 F.2d 987, 989 (11th Cir. 1986) (in Title VII context, stating that an operator of nursing homes was in industry affecting commerce).

11. Baker was employed by Elevate North from May 19, 2020, through July 24, 2020, as a Certified Nurse's Assistant (commonly referred to as a "CNA"). Declaration of Jeffery Goldstein (Ex. C), ¶ 8.

12. During all times relevant to this lawsuit, Elevate North has been a member of the Illinois Association of Health Care Facilities. *See* Ex. C, ¶ 4.

13. At all relevant times, the Illinois Association of Health Care Facilities has been a party to a collective bargaining agreement ("CBA") for and on behalf of its members, including Elevate North, with SEIU Healthcare Illinois and Indiana (the "Union"). *See* Ex. C, ¶ 5; SEIU

3

Master CBA (Ex. 1 to the Declaration of Jeffery Goldstein), p. 4. The CBA was effective from May 1, 2020, through April 30, 2022. Ex. C-1, pp. 1, 4.

14. Pursuant to the CBA, the Union has at all relevant times been the "sole collective bargaining agent" for all full-time and part-time Certified Nurse's Assistants. Ex. C-1, p. 4. As a Certified Nurse's Assistant, Baker's terms and conditions of employment have been governed by the CBA. Ex. C, ¶ 9; Ex. C-1, p. 4.

15. The CBA contains a broad "Management Rights" section. *See* Ex. C-1, pp. 8–9. In pertinent part, the CBA provides that "Management of the Home, the control of the premises and the direction of the working force are vested exclusively in the Employer subject to the provisions of this Agreement. The right to manage includes, but is not limited to the following: . . . to determine or change the methods and means by which its operations ought to be carried on; to set reasonable work standards; . . . to introduce new and improved methods or facilities; and to change existing methods or facilities." *Id.* The Management Rights section further makes clear that: "The Employer has and retains the powers, functions, rights and authority it would have, but for the signing of this Agreement, except those specifically abridged or modified by the express provisions of this Agreement, provided, however, that such powers, functions, rights, and authority, shall not be enforced or exercised contrary to or inconsistent with the provisions of this Agreement." *Id.*

16. The CBA contains a "Grievance Procedure," which applies to all grievances by the Union or any employee with respect to "the interpretation or application of the provisions of this Agreement" and culminates in arbitration in accordance with the rules of the Federal Mediation and Conciliation Service. *See* Ex. C-1, pp. 18–19.

4

17. In *Fernandez v. Kerry, Inc.*, 14 F.4th 644, 645 (7th Cir. 2021), the Seventh Circuit recognized that timekeeping methods are a proper subject of collective bargaining between an employer and a union acting as the employees' exclusive and legally authorized representative, and that their agreement concerning those methods is governed by the LMRA. *Id.* at 646 (noting that "provisions in the Railway Labor Act parallel to Section 301 prohibit workers from bypassing their unions and engaging in direct bargaining with their employers about how to clock in and out" (citing *Miller v. Southwest Airlines Co.*, 926 F.3d 898, 903–05 (7th Cir. 2019)).

18. Additionally, the Court in *Fernandez* explained that disputes over biometric timekeeping systems (like the one alleged in this case) necessarily require interpretation of the underlying collective bargaining agreement. As the Court noted, "[i]f an employer asserts that a union *has* consented [to the timekeeping system], then any dispute about the accuracy of that contention is one about the meaning of a collective-bargaining agreement and must be resolved between the union and the employer." *Id*. at 645–46 (emphasis in original) (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987)). *Fernandez* recognized that "[i]t is not possible even in principle to litigate a dispute about how an [employer] acquires and uses fingerprint information for its whole workforce without asking whether the union has consented on the employees' collective behalf." *Id.* at 646 (quoting *Miller*, 926 F.3d at 904).

19. Further, the Court in *Fernandez* ruled for the first time that the LMRA *completely* preempts a unionized employee's state-law BIPA claims. *Id*. at 645–47. The Court extended its previous holding in *Miller*,[1] which found that the Railway Labor Act ("RLA") preempts state-law

---

[1] In *Miller*, the Seventh Circuit held that BIPA claims related to a finger scan time clock were preempted by federal labor law and ordered that the claims be dismissed to arbitration. It reasoned that a union may be an employee's "legally authorized representative" under BIPA and may consent on the employee's behalf to the collection and use of biometric data. 926 F.3d at 903. Therefore, it held that whether the unions "did consent to the collection and use of biometric data,

5

BIPA claims, by explaining that its recent decision reviewing *Miller* in *Fox v. Dakkota Integrated Systems, LLC*, 980 F.3d 1146, 1156 (7th Cir. 2020), "suggested that the same result would obtain in litigation under the LMRA." *Id*. at 646.

20. Indeed, courts in this District and others have made this comparison between the RLA and the LMRA preemption provisions, too. *See, e.g.*, *Hicks v. Evergreen Living & Rehab Ctr., LLC*, 2021 WL 4440315, at *4 (N.D. Ill. Mar. 8, 2021) ("Although *Miller* involved preemption under the Railway Labor Act, the preemption standard under that statute is 'virtually identical' to the preemption standard applicable under Section 301 of the LMRA." (citing *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 260 (1994))); *see also Roberson v. Maestro Consulting Services LLC*, 2020 WL 7342693, at *9 (S.D. Ill. Dec. 14, 2020) (relying on *Fox* and noting that "district courts within this circuit have consistently found that BIPA claims from unionized employees are preempted by federal labor law").

21. Yet it was not until the Seventh Circuit's decision in *Fernandez* that an appellate court conclusively held the LMRA (like the RLA) *completely* preempts unionized employees' BIPA claims, which provides grounds for removal in this case. *See Rea v. Michaels Stores*, 742 F.3d 1234, 1238 (9th Cir. 2014) (intervening decision of appellate court may permit removal); *see*

---

or perhaps grant authority through a management-rights clause, is a question for an adjustment board." *Id.* Further, the Seventh Circuit explained that "the retention and destruction schedules for biometric data, and whether [employers] may use third parties to implement timekeeping and identification systems, are topics for bargaining between unions and management." *Id.* The Court also stated that the fact that BIPA "concerns workers' privacy does not distinguish it from many other subjects, such as drug testing, that are routinely covered by collective bargaining and on which unions give consent on behalf of the whole bargaining unit." *Id.* at 904. The Seventh Circuit concluded that the dispute "must go to an adjustment board" because "our plaintiffs assert a right in common with all other employees, dealing with a mandatory subject of collective bargaining." *Id.*

*also Wisconsin v. Amgen, Inc.*, 516 F.3d 530, 534 (7th Cir. 2008) (a decision in another case that resolves federal jurisdiction may provide grounds for removal).

22. Based on the holding in *Fernandez*, there is no doubt that federal question jurisdiction exists in this case. Baker is a unionized worker who seeks to bring BIPA-related timekeeping claims against her employer. Those claims are subject to the bargaining terms of the CBA entered into between the Illinois Association of Health Care Facilities—on behalf of Elevate North—and the Union. Further, as the Seventh Circuit has made clear, Baker's claims necessarily require interpretation of the CBA. Just as in *Fernandez*, the CBA between Illinois Association of Health Care Facilities and the Union includes a broad management rights clause and mandatory grievance procedure, which explicitly includes arbitration. Thus, under *Fernandez*, this action is now completely preempted by Section 301 of the LMRA. *See Lingle*, 486 U.S. 399, 413 (1988) (federal district courts have exclusive jurisdiction over suits that require "the interpretation of a collective-bargaining agreement"). Accordingly, removal to this Court is proper.

## **DEFENDANTS HAVE COMPLIED WITH ALL PREREQUISITES FOR REMOVAL**

23. Counsel for the Elevate Care Defendants certify that a copy of this Notice of Removal is being filed with the Clerk of the Cook County Circuit Court, pursuant to 28 U.S.C. § 1446(d). A copy of the state court notice is attached hereto as Exhibit D.

24. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon the Elevate Care Defendants in the State Court Action are attached hereto as Ex. A.

25. The Elevate Care Defendants reserve the right to amend or supplement this Notice of Removal, and reserve all rights and defenses, including those available under Federal Rule of Civil Procedure 12.

WHEREFORE, Elevate North, with the consent of Elevate Inc., hereby removes the above-captioned civil action from the Circuit Court of Cook County, Illinois to the United States District Court for the Northern District of Illinois.

Dated: July 28, 2022

Respectfully submitted,

**ELEVATE CARE, INC. and**
**ELEVATE CARE CHICAGO NORTH, LLC**

By: */s/ Matthew C. Wolfe*
     One of Their Attorneys

Melissa A. Siebert (#6210154)
Matthew C. Wolfe (#6307345)
SHOOK, HARDY & BACON L.L.P.
111 South Wacker Drive, Suite 4700
Chicago, IL 60606
Tel: (312) 704-7700
Fax: (312) 558-1195
masiebert@shb.com
mwolfe@shb.com

Elisabeth A. Hutchinson
SHOOK, HARDY & BACON L.L.P.
1660 17th Street, Suite 450
Denver, CO 80202-1254
Tel: (303) 285-5300
Fax: (303) 285-5301
ehutchinson@shb.com

***Attorneys for Defendants***

## **CERTIFICATE OF SERVICE**

I, Matthew C. Wolfe, an attorney, hereby certify that on **July 28, 2022**, I caused a true and correct copy of **NOTICE OF REMOVAL** to be electronically filed with the Court through its CM/ECF system and a courtesy copy served by electronic mail upon the following counsel of record:

>Michael W. Drew
>**NEIGHBORHOOD LEGAL LLC**
>20 North Clark Street, Suite 3300
>Chicago, IL 60602
>(312) 967-7220
>mwd@neighborhood-legal.com
>
>*Attorneys for Plaintiff*

                            */s/ Matthew C. Wolfe*